UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANTHONY SCOTT WILLIAMS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 4:14-CV-664 NCC |
| MICHAEL BOWERSOX, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Anthony Williams for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). After reviewing the case file, the Court finds that Petitioner is not entitled to relief. Therefore, the petition is denied.

## Background

Petitioner was charged, by way of Information in Lieu of Indictment, with one count of attempted robbery in the first degree, one count of murder in the second degree, and two counts of armed criminal action. Resp't Ex. B, 20-21. After a jury trial, the trial court sentenced Petitioner to an aggregate term of thirty years' imprisonment. *Id.* at 67-71.

The facts of this case, as set forth by the Missouri Court of Appeals, are as follows:

On or about March 22, 2010, Earl Bush (Victim) and Ebonyi Blakely (Witness) went to the Nico Terrance Apartments in St. Louis County. As they were leaving the complex, [Williams] told them that "Sed" wanted him to stop Victim. Victim parked the car and waited for [Williams] to get Sed.

When [Williams] came back outside and told Victim that Sed would be out in a minute, Victim said he could not wait, and gave [Williams] his phone number. As Victim began to pull away, [Williams] pulled out a gun and said, "give it up" or "give me what you got." When Victim continued to drive away, [Williams] shot and killed Victim.

> After following "rumors, suspects, and innuendos", the lead investigator of Victim's homicide, Detective Bob Vogel (Detective Vogel), developed two lineups to show Witness. After Witness identified [Williams] from the second lineup, Detective Vogel arrested and interrogated [Williams]. Although [Williams] initially denied being at the apartment complex the night of the murder, he eventually admitted that he shot Victim. [Williams] explained that because Victim had robbed him at gunpoint earlier in the evening, he shot Victim while trying to get his money back. When left alone in the interview room, the police recorded [Williams] saying to himself, "I can't believe I did that. I fucked my whole life up" and he couldn't believe his friend "snitched" on him. When Detective Vogel returned to the room, however, [Williams] said he had lied earlier, and that he did not shoot Victim.
>
> At trial, [Williams] testified in his own defense that he did not shoot Victim, and that he was not present during the alleged shooting. During the State's closing arguments, the prosecutor told the jury:
>
>> Now, the investigation led to [Williams]. Detective Vogel didn't just pull his name out of a hat. They had his name before [Witness] ever identified him. That's why they knew who to show her.
>
> After defense counsel objected claiming that the prosecutor misstated the evidence, the trial court told the jury to "ignore the last statement." Afterwards, the prosecutor continued:
>
>> They got [Williams's] name before [Witness] ever identified him. That's how [Detective Vogel] knew what pictures to show her, what picture to put in the lineup to show her. They had his name.
>
> Defense counsel did not object to this statement.
>
> Following the close of all evidence and arguments by both sides, the jury found [Williams] guilty of one count of attempted robbery in the first degree, one count of murder in the second degree, and two counts of armed criminal action.

Resp't Ex. E, 2-4.

On direct appeal, Petitioner argued that the trial court plainly erred in failing to *sua sponte* declare a mistrial during the prosecutor's closing argument because the prosecutor made improper statements. Resp't Ex. C, 9. Specifically, Petitioner argued that the prosecutor's statement, "They got [Williams's] name before [Witness] ever identified him. That's how [Detective Vogel] knew what pictures to show her, what picture to put in the lineup to show her.

2

They had his name," injected matters improper for consideration into the minds of the jurors and inflamed their passions and prejudices. *Id.*

The Missouri Court of Appeals reviewed Petitioner's claim for plain error because he failed to preserve it for appeal. *Id.* The court affirmed, finding that the prosecutor's remarks were supported by the evidence. *Id*. at 10-11. The court also found that the remarks did not prejudice Petitioner because the evidence of guilt was overwhelming. *Id.* at 11. The judgment was entered on April 9, 2013, and the mandate issued on May 1, 2013. *Id.* at 1, 4-5.

On November 12, 2013, Petitioner filed a Rule 29.15 motion for postconviction relief. *Williams v. Missouri*, No. 13SL-CC04045 (St. Louis County). The government moved to dismiss the motion as untimely, and on May 2, 2014, the court granted the government's motion and dismissed the case. *Id.*; Resp't Ex. F, 1-2. Petitioner did not appeal.

**Grounds for Relief**

Petitioner argues that (1) the trial court plainly erred in failing to *sua sponte* declare a mistrial during the prosecutor's closing argument after the prosecutor made the contested remark; (2) the police did not follow up on evidence that pointed away from him; (3) Blakely's testimony was inconsistent and she committed perjury during trial; and (4) the court did not contact witnesses on his behalf or look into his alibi.

Respondent argues that the claims are both procedurally defaulted and meritless.

**Procedural Default**

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been

3

fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (quoting *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (applying the rule set out in *Hayes v. Lockhart*, 766 F.2d 1247 (8th Cir. 1985)).

Because Petitioner failed to preserve Ground One of the petition for appeal, it is procedurally barred. Petitioner has not alleged cause and prejudice for the default. As a result, Petitioner is not entitled to relief on this Ground.

Petitioner says that he raised Grounds Two, Three, and Four in his Rule 29.15 motion. The motion is not included in the exhibits, so the Court will assume that he is correct. However, these grounds are procedurally barred because Petitioner did not file an appeal from the denial of his motion. *See Lowe-Bey v. Groose*, 28 F.3d 816, 818 (8th Cir. 1994). Petitioner has not shown cause and prejudice of the default. Accordingly, he is not entitled to habeas relief, and the petition must be denied.

Regardless of the default, the Court will address the merits of the petition.

4

**Merits Standard**

In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

**Merits Analysis**

1.   *Ground One*

Petitioner argues that the trial court plainly erred in failing to *sua sponte* declare a mistrial during the prosecutor's closing argument after the prosecutor made the "They got [Williams's] name before [Witness] ever identified him" remark. Respondent contends that the

decision of the Missouri Court of Appeals was not contrary to federal law and that the claim is meritless.

A federal habeas court narrowly reviews alleged due process violations stemming from a state court conviction. *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). A petitioner must show "that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair. To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (quotation omitted).

In this case, Petitioner did not object to the prosecutor's statement. As stated above, the trial court granted Petitioner's objection to the first iteration of the statement and ordered the jury to disregard it. In finding no plain error, the Missouri Court of Appeals stated,

> "Plain error will seldom be found in unobjected-to closing argument." *State v. Thompson*, 390 S.W.3d 171, 174 (Mo. App. E.D. 2012). "[C]ourts hesitate to find plain error in a failure to sua sponte correct a statement made during closing arguments because trial strategy looms as an important consideration in deciding whether to object during closing argument." [*State v. Cannady*, 389 S.W.3d 306, 310 (Mo. Ct. App. 2013)]. In closing argument, the State has wide latitude in making reasonable inferences from the evidence presented at trial. *Id.* Further, closing arguments must be interpreted with consideration to the entire record rather than in isolation. *State v. Vanlue*, 216 S.W.3d 729, 734 (Mo. App. S.D. 2007).
>
> In this case, the evidence supported the reasonable inference that Detective Vogel had developed Defendant's name as a suspect prior to showing Witness the photo lineup. Detective Vogel testified that during the course of his investigation, he developed a suspect and put the suspect in a photo lineup to show Witness. In generating the photo lineup in which Witness identified Defendant, Detective Vogel explained that he put a suspect's name into a computer program, which generated other arrest photographs of individuals with physical features similar to the suspect. From that photo lineup, Witness identified Defendant as the individual who shot Victim. Furthermore, Detective Vogel testified that he indicated to Defendant "some witnesses, some of which who were very close to [Defendant,] that told me that they saw [Defendant at the scene of the crime.]" The testimony at trial supports the reasonable inference that Detective Vogel

6

independently developed Defendant as a suspect during the course of his investigation and used Defendant's name in generating the photo lineup. During closing statements, therefore, the State had a right to argue that Detective Vogel developed Defendant as a suspect prior to showing Witness the photo lineup. *See Thompson*, 390 S.W.3d at 176.

Furthermore, even if the State's argument was improper, the trial court did not err by not declaring a mistrial sua sponte. First, the jury was instructed to ignore the statement. *See Vanlue*, 216 S.W.3d at 735 (explaining that "jurors are presumed to follow the court's instructions."). Second, the State's remarks did not prejudice the Defendant. Alleged errors in closing arguments do not justify relief under the plain error rule unless they are found to have a decisive effect on the jury. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993). For such a decisive effect to occur, there must be a reasonable probability that, in the absence of the State's alleged improper comments, the verdict would have been different. *Thompson*, 390 S.W.3d at 176. Defendant has the burden of demonstrating that the alleged errors resulted in a manifest injustice to him. *Id.*

Here, Defendant was not prejudiced by the statement at closing argument because of the overwhelming evidence of Defendant's guilt. The evidence presented at trial shows that Witness, who was in the car with Victim during the shooting, identified Defendant, in both a photo lineup and at trial, as the individual who shot Victim. Detective Vogel testified that Defendant initially admitted to shooting the victim, and only later explained that his confession was a lie. Furthermore, during Defendant's interrogation, Defendant was recorded saying to himself, "I can't believe I did that. I fucked my whole life up." In light of the evidence presented, Defendant has failed to demonstrate that the State's remark in closing arguments that Detective Vogel had Defendant's name prior to showing Witness the photo lineup, had a decisive effect on the verdict. *See Parker*, 856 S.W.2d at 333.

Resp't Ex. C at 9-11.

The appellate court articulated the correct standard for analyzing due process claims. It's decision is well-reasoned and is consistent with the evidence produced at trial. Petitioner was not prejudiced by the remark, in that the jury could have convicted him irrespective of the statement. The other evidence presented to the jury, such as Ebonyi Blakely's in-court identification of him and his confession, was sufficient for any reasonable juror to find him guilty. As a result, the Court finds that the state court's decision is not contrary to, or an unreasonable application of, clearly established federal law. Ground One fails on the merits.

7

2. *Ground Two*

In Ground Two, Petitioner argues that the police did not follow up on evidence that pointed away from him. Respondent maintains that this ground is noncognizable.

Respondent is correct. Petitioner has failed to allege facts, which if proved, would entitle him to habeas relief. He has not alleged that the evidence gathered by the police officers was insufficient to support the conviction. Nor has he alleged that the officers acted in an unconstitutional manner, such as planting evidence. And he has not alleged that the prosecutor withheld exculpatory evidence. This claim fails to allege a constitutional violation, and therefore, is noncognizable in these proceedings. *See Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997).

3. *Ground Three*

In Ground Three, Petitioner argues that Ebonyi Blakely's testimony was inconsistent and she committed perjury during trial. He says she first testified she could not see what happened during the shooting because it was too dark. He also claims the photo lineup was unduly suggestive because the detectives identified him as the shooter. Respondent contends that inconsistent statements by a witness are matters for cross-examination and jury deliberation. Respondent has not, however, responded to Petitioner's claim that the lineup was suggestive.

This Court is "not permitted to conduct [its] own inquiry into witness credibility; that is a task reserved to the jury." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Therefore, whether Blakely committed perjury is not a cognizable claim for relief.

With regard to the lineup, Petitioner filed a pretrial motion to suppress identification, arguing that the lineup was unduly suggestive. Resp't Ex. B, 11-12. The court held a hearing on the motion just before trial. Resp't Ex. A, 190-201. During the hearing, Detective Vogel

testified that he showed Blakely two photo lineups. *Id.* at 195. Both lineups contained Petitioner's image and five other randomly generated individuals with similar characteristics, like age, ethnicity, and hairstyle. *Id.* at 196. Blakely was unable to identify Petitioner in the first lineup, but she identified him in the second one about ten days later. *Id.* at 192-96. Both lineups were printed on a single sheet of paper, containing the six photographs. *Id.* at 197-98. After eliciting testimony from Vogel about the lineup procedures, defense counsel argued "that the procedure used [was] inherently suggestive and [violated Petitioner's] constitutional rights . . ." *Id.* at 201. She did not elaborate on the argument. The court denied the motion without discussion. *Id.*

During cross-examination, defense counsel attempted to impeach Blakely's identification of Petitioner by eliciting testimony that the apartment complex where the shooting took place was crime-ridden, that she did not feel safe sitting in the car, that the parking lot where the crime occurred was not well lit, and that she may not have gotten a good look at him because she did not get out of the car and was not paying attention to her surroundings. *Id.* at 262, 264-71. Counsel also questioned her about the lineup procedures. *Id.* at 272-74.

In closing argument, counsel again highlighted the factors stated above. *Id.* at 428-30. With regard to the lineup, counsel said,

> Now the next thing I want to talk about is the lineup that she was shown where she identified [Petitioner]. I want to talk about the procedure, because a lot of the questions that I was asking of the detective and also of [Blakely] if when she viewed the lineup she looked at all six pictures at one time. It is human nature that when you look at photographs side by side, one another you make comparisons to other pictures and pick out the one that you think is closest resembling the person.
>
> The other problem with this lineup as she looked at is if you look at No. 1 and 3, they look like the same person with their hair pulled back. If they're the same person, that cuts down two pictures. She has four people [sic] to pick from. That's a 25 percent chance [sic] of Anthony getting picked out of this photo lineup.

9

> The procedure that was used should have been one photo right after another for her to make a clear identification of the person that she saw. Because of the procedure used and the faultiness of this identification, it is unreliable; and, therefore, that should be reasonable doubt that she picked my client out as the person in there. You should give him the benefit of that doubt and find him not guilty.

*Id.* at 429-30.

The Supreme Court has recognized that there is "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 132 S.Ct. 716, 720 (2012).

As stated above, Petitioner did not present this claim to the Missouri Court of Appeals. He did not file a reply in this case, and the petition contains only a conclusory statement about the suggestibility of the lineup. As a result, merits review of this issue is difficult. The Court assumes that if this issue had been presented to the Missouri Court of Appeals, the court would have used the correct standard and denied it. Therefore, the only issue is whether denial of this claim would have been contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court.

The Court has not found any Supreme Court cases holding that a photo lineup must be individual photographs presented one at a time to the witness to satisfy the defendant's due process rights. Additionally, Blakely testified that when she viewed the lineup, the police told her that the suspect may not be on it. Resp't Ex. A, 257. Therefore, if the state court had denied this claim, its decision would not be contrary, or an unreasonable application of, clearly established federal law. Ground Three is without merit.

4.   *Ground Four*

In Ground Four, Petitioner argues that the court erred because it did not contact witnesses on his behalf or look into his alibi. This claim is not cognizable because courts do not function as investigative agencies. This claim is meritless.

**Conclusion**

For these reasons, Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus is **DENIED**, and this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability.

Judgment will be entered forthwith.

Dated this 20th day of June, 2017.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE